```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------X
LORRAINE CHRISTIE, individually and
as president and sole shareholder of
Contiguous Towing, Inc.,

                Plaintiff,
                                           MEMORANDUM & ORDER
        -against-                          14-CV-4919(JS)(SIL)

STATE OF NEW YORK, NEW YORK STATE
DEPARTMENT OF TRANSPORTATION, JOAN
McDONALD, in her official and
individual capacity, MICHALE UFKO,
in his official and individual
capacity, JESSICA POLITO PARKER,
in her official and individual
capacity, and DOE CLIFFORD,

                Defendants.
--------------------------------------X
APPEARANCES
For Plaintiff:      Mindy L. Kallus, Esq.
                    Steven A. Morelli, Esq.
                    The Law Offices of Steven A. Morelli, P.C.
                    1461 Franklin Ave.
                    Garden City, NY 11530

For Defendants:     Ralph Pernick, Esq.
                    New York State Attorney General
                    200 Old Country Road, Suite 240
                    Mineola, NY 11501
```

SEYBERT, District Judge:

Plaintiff Lorraine Christie ("Plaintiff" or "Christie") commenced this action against defendants the State of New York (the "State"), New York State Department of Transportation (the "DOT"), Joan McDonald ("McDonald"), Michael Ufko ("Ufko"), Jessica Polito Parker ("Parker") and Doe Clifford

("Clifford," and collectively "Defendants") on August 19, 2014. (Compl., Docket Entry 1.) Plaintiff alleges, <u>inter alia</u>, a violation of her constitutional rights in connection with the revocation of a towing contract held by Contiguous Towing, Incorporated ("Contiguous"). (<u>See</u> Compl.) Currently before the Court is Defendants' motion to dismiss the Complaint pursuant to Rules 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction and failure to state a claim. (Defs.' Mot., Docket Entry 8.) For the following reasons, Defendants' motion is GRANTED.

<u>BACKGROUND</u>[1]

Contiguous is a towing and repair corporation located in Freeport, New York. (Compl. ¶ 11.) Sometime before September 30, 2013, Contiguous submitted the highest bid to the DOT for a contract providing them the exclusive right to tow in in the New York State Parkway, Sector D ("Sector D"). (Compl. ¶¶ 15-16.) Sector D encompasses the Southern State Parkway between the Meadowbrook Parkway and the Wantagh Parkway, and south to the Ocean Parkway between Long Beach and Suffolk County. (Compl. ¶ 16.) On September 30, 2013, Contiguous entered into the bid-upon contract with the DOT (the "Contract"). (Compl. ¶ 14.) The Contract was effective

---

[1] The following facts are drawn from the Complaint and are presumed to be true for the purposes of this Memorandum and Order.

immediately, and remained in effect for five years. (Compl. ¶ 15.) Contiguous made an initial payment of $50,000 to the DOT, followed by a February 2014 payment of $30,000 and a March 2014 payment of $21,000. (Compl. ¶ 18.)

Plaintiff alleges that in spite of the Contract, the DOT frequently awarded towing jobs within Region D to Contiguous' competitor, All County Auto Body & Towing ("All County"). (Compl. ¶ 20.) As a result, Contiguous lodged complaints against All County with the DOT for encroaching on territory assigned in the Contract. (Compl. ¶ 21.) On one occasion in January 2014, a dispute arose between Contiguous and All County over a tow job in Region D. (Compl. ¶ 21.) During this incident, Clifford, a New York State Trooper, falsely accused Contiguous of not carrying insurance, and had Contiguous' vehicle impounded. (Compl. ¶ 22.) At some point during their interaction, Clifford remarked that Plaintiff was a "troublemaker" and was "unprofessional." (Compl. ¶ 54.)

Throughout the contractual period, the DOT found Contiguous in violation of various regulations. Examples of these violations include over-charging customers and failing to disclose inactive corporations as part of its initial SVRQ.[2]

---

[2] An SVRQ is a Standard Vendor Responsibility Questionnaire. In an SVRQ, a potential vendor is required to disclose the existence of entities associated with the vendor. (Compl. ¶ 26.)

(Compl. ¶¶ 24-26.) Plaintiff maintains that the violations found by the DOT were either factually inaccurate or minor. (Compl. ¶ 23.) Plaintiff explains that the overcharge was only a proposed invoice sent to the DOT for approval, not a bill sent to customers. (Compl. ¶ 25.) Regarding her deficient SVRQ disclosure, Plaintiff explains that she actually discussed the existence of these associated entities at a November 2012 meeting with defendants, Jessica Parker and Michael Ufko. (Compl. ¶ 26.)

In April 2014, the DOT's Contract Review Unit held a hearing regarding Contiguous' violations. (Compl. ¶ 28.) Plaintiff insists that prior to that hearing, she submitted documentation showing that Contiguous was substantially compliant with DOT regulations. (Compl. ¶ 27.) Following the hearing, the DOT terminated the Contract, effective May 16, 2014. (Compl. ¶ 27.) Comparatively, Plaintiff alleges that the DOT did not issue any suspensions or terminate All County's contract, despite numerous customer complaints. (Compl. ¶ 34.) However, Plaintiff does not allege whether All County was charged with violations comparable to the ones charged to Contiguous.

From these facts, Christie asserts five causes of action. <u>First</u>, Plaintiff claims that the DOT violated her First Amendment rights by retaliating against her. (Compl. ¶ 50.)

4

Second, Plaintiff alleges violations of her right to due process under the Fourteenth Amendment because she was deprived of a property right without a sufficient hearing. (Compl. ¶ 51.) Third, Plaintiff alleges a violation of her equal protection rights under the Fourteenth Amendment because the DOT selectively enforced their rules by prosecuting Contiguous and declining to prosecute All County, a comparative entity. (Compl. ¶¶ 34, 52.) Fourth, Christie alleges a state claim for tortious interference with contractual relations against defendants Jessica Parker and Michael Ufko. (Compl. ¶ 53.) Fifth, Christie alleges a stigma-plus claim against defendants DOT and Clifford. (Compl. ¶¶ 22, 54.)

Broadly speaking, Plaintiff's claims arise from two general injuries. First, the Plaintiff alleges that the violation of her constitutional and state rights led to the loss of the Contract. (Compl. ¶¶ 50-51.) This injury forms the basis of Plaintiff's first, second, third and fourth causes of action. Second, Christie alleges that a violation of her constitutional rights damaged her reputation through the intentional use of disparaging remarks by the Defendants. (Compl. ¶ 54.) This injury forms the basis of Plaintiff's fifth claim. For simplicity's sake, the Court refers to those of Plaintiff's claims that fall along the former line of argument

as Plaintiff's "Contractual Injury Claims" and those adopting the latter argument as Plaintiff's "Stigma-Plus Claim."

## DISCUSSION

The Court will first consider Defendants' jurisdictional challenges before discussing whether Plaintiff has stated a claim for relief.

I. Subject Matter Jurisdiction

A. Legal Standard

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). In resolving a motion to dismiss for lack of subject matter jurisdiction, the Court may consider affidavits and other materials beyond the pleadings. See Morrison v. Nat'l Austl. Bank, Ltd., 547 F.3d 167, 170 (2d Cir. 2008). Though the Court must accept the factual allegations contained in the complaint as true, it will not draw argumentative inferences in favor of plaintiffs; subject matter jurisdiction must be shown affirmatively. See id., Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd., 968 F.2d 196, 198 (2d Cir. 1992); Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998). "A plaintiff asserting subject matter jurisdiction has the burden

of proving by a preponderance of the evidence that it exists." Makarova, 201 F.3d at 113.

B. Christie's Standing

Standing is a jurisdictional question that determines "the power of the court to entertain the suit." Warth v. Seldin, 422 U.S. 490, 498, 95 S. Ct. 2197, 2205, 45 L. Ed. 2d 343 (1975). Standing generally requires that a plaintiff show:

> (1) [T]hat he suffered an injury-in-fact--an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical; (2) that there was a causal connection between the injury and the conduct complained of; and (3) that it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Carver v. City of New York, 621 F.3d 221, 225 (2d Cir. 2010) (internal quotation marks and citation omitted); Liberty Global Logistics LLC v. U.S. Mar. Admin., No. 13-CV-0399, 2014 WL 4388587, at *3 (E.D.N.Y. Sept. 5, 2014). A plaintiff suffers an injury-in-fact where she has been injured in a "personal and individual way." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 n.1, 112 S. Ct. 2130, 2136 n.1, 119 L. Ed. 2d 351 (1992). Thus, whether a plaintiff has standing "depends considerably upon whether the plaintiff is himself an object of the action (or forgone action) at issue." Id. at 561, 112 S. Ct. at 2137

7

(parentheses in original); Ritell v. Briarcliff Manor, 466 F. Supp. 2d 514, 519 (S.D.N.Y. 2006).

Because Article III confers standing only to a plaintiff that has been injured in "a personal and individual way," Lujan, 504 U.S. at 560 n.1, it is axiomatic that "a shareholder--even the sole shareholder--does not have standing to assert claims alleging wrongs to the corporation." Jones v. Niagara Frontier Transp. Auth., 836 F.2d 731, 736 (2d Cir. 1987), cert. denied, 488 U.S. 825, 109 S. Ct. 74, 102 L. Ed. 2d 50 (1988); Abrams v. Donati, 66 N.Y.2d 951, 953, 498 N.Y.S.2d 782, 783 (1985) ("For a wrong against a corporation a shareholder has no individual cause of action, though he loses the value of his investment or incurs personal liability in an effort to maintain the solvency of the corporation."); see also Domino's Pizza, Inc. v. McDonald, 546 U.S. 470, 477, 126 S. Ct. 1246, 1250, 163 L. Ed. 2d 1069 (2006) ("[T]he shareholder and contracting officer of a corporation has no rights and is exposed to no liability under the corporation's contracts."). This includes presidents of corporations as well as contracting officers. See Chrebet v. County of Nassau, 24 F. Supp. 3d 236, 246 (E.D.N.Y. 2014).

Here, it is undisputed the Contract belonged to Contiguous, not Plaintiff. Accordingly, the revocation of the Contract did not injure Christie in the "personal and individual

way" required by Article III.  Lujan, 504 U.S. at 560 n.1.  All of the "Contract Injury Claims" arise from an injury suffered by an entity other than Plaintiff.  Christie was not injured in her individual capacity because a sole-shareholder "does not have standing to sue on behalf of the corporation for injuries sustained to the corporation."  Chrebet, 24 F. Supp. 3d at 246 (citing Potthoff v. Morin, 245 F.3d 710, 717-18 (8th Cir. 2001).  Nor does Christie's attempt to sue in her official capacity as the President of Contiguous confer standing upon her.  For a president to have standing, she must have been "been injured directly and independently of the corporation."  Chrebet, 24 F. Supp. 3d at 246 (internal quotation marks and citation omitted).  Plaintiff has not alleged an injury independent of that suffered by Contiguous.[3]  See id.

In contrast, Christie has standing to assert her Stigma-Plus Claim, because that claim arises from the alleged damage to her reputation--an injury allegedly suffered by Plaintiff, not Contiguous.  See Lujan, 504 U.S. at 560 n.1.

---

[3] Plaintiff also cannot bring a claim under the theory that she is a third party beneficiary because a third party is a "non-party" who is the "'intended beneficiary of the contract, not an incidental beneficiary to whom no duty is owed.'"  Zaretsky v. William Goldberg Diamond Corp., No. 14-CV-1113, 2014 WL 4160232, at *2 (S.D.N.Y. August 18, 2014) (quoting Hillside Metro Assocs., LLC v. JP Morgan Chase Bank, Nat'l Ass'n, 747 F.3d 44, 49 (2d Cir. 2014 (emphasis in original))).  Moreover, Plaintiff is not a non-party because she is an agent of Contiguous.  See Minetos v. City Univ. of New York, 925 F. Supp. 177, 187 (S.D.N.Y. 1996).

Accordingly, because Plaintiff lacks standing to assert her Contract Injury Claims, Plaintiff's first, second, third, and fifth causes of action are DISMISSED for lack of subject matter jurisdiction.

II. Defendant's Motion to Dismiss for Failure to State a Claim

A. Legal Standard

In deciding a Rule 12(b)(6) motion to dismiss, the Court applies a "plausibility standard," which is guided by "[t]wo working principles." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007); accord Harris v. Mills, 572 F.3d 66, 71-72 (2d Cir. 2009). First, although the Court must accept all allegations as true, this "tenet" is "inapplicable to legal conclusions;" thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678; accord Harris, 572 F.3d at 72. Second, only complaints that state a "plausible claim for relief" can survive a Rule 12(b)(6) motion to dismiss. Iqbal, 556 U.S. at 679. Determining whether a complaint does so is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.; accord Harris, 572 F.3d at 72.

Furthermore, in deciding a motion to dismiss, the Court is confined to "the allegations contained within the four corners of [the] complaint." Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 71 (2d Cir. 1998). However, this has been interpreted broadly to include any document attached to the complaint, any statements or documents incorporated in the complaint by reference, any document on which the complaint heavily relies, and anything of which judicial notice may be taken. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002) (citations omitted); Kramer v. Time Warner Inc., 937 F.2d 767, 773 (2d Cir. 1991).

B. Application

A stigma-plus claim arises out of the due process clause of the Fourteenth Amendment and "refers to a claim brought for injury to one's reputation (the stigma) coupled with the deprivation of some 'tangible interest' or property right (the plus), without adequate process." DiBlasio v. Novello, 344 F.3d 292, 302 (2d Cir. 2003) (citation omitted). In order to state a stigma-plus claim,

> First, the plaintiff must . . . show that the government made stigmatizing statements about [her]—statements that call into question [the] plaintiff's good name, reputation, honor, or integrity . . . Second, a plaintiff must prove these stigmatizing statements were made public . . . Third, the plaintiff must show that the stigmatizing statements were made

11

> concurrently with, or in close temporal relationship to, the plaintiff's dismissal from government employment.

Segal v. City of New York, 459 F.3d 207, 212-13 (2d Cir. 2006) (internal quotation marks and citations omitted, alterations in original). Concerning the third element, the harm cannot be "abstract" and "speculative." Hill v. Donoghue, 815 F. Supp. 2d 583, 589 (E.D.N.Y. 2011).

Here, Plaintiff asserts that her reputation was damaged through disparaging remarks such as "troublemaker" and "unprofessional." (Compl. ¶ 54.) These allegations are insufficient to successfully plead a stigma-plus claim because the only harm alleged is abstract reputational harm. See Hill, 815 F. Supp. 2d at 589 ("If the only damage is to his reputation, [p]laintiff cannot maintain a defamation suit against the federal government." (citation omitted)). The loss of a tangible interest of property right is required, and the amorphous reputational harm is insufficient. See id. Here, Defendants did not cause Plaintiff to lose the Contract by virtue of the alleged stigma because the Contract belonged to Contiguous, not Plaintiff. As such, Plaintiff has failed to demonstrate the "plus," in her Stigma-Plus Claim, and her claim therefore fails.

Accordingly, Plaintiff's Stigma-Plus Claim is DISMISSED.

12

III. <u>Leave to Amend</u>

"When a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint." <u>Hayden v. County of Nassau</u>, 180 F.3d 42, 53 (2d Cir. 1999); <u>see</u> <u>Ronzani v. Sanofi S.A.</u>, 899 F.2d 195, 198 (2d Cir. 1990). The court is given discretion as to whether leave to amend should be granted, but refusal to grant leave must be "based on valid ground." <u>Id.</u> If the plaintiff cannot demonstrate that the amended complaint could survive dismissal, then opportunity to replead is denied. <u>Hayden</u>, 180 F.3d at 53; <u>see</u> <u>Pani</u>, 152 F.3d at 76.

Plaintiff Christie does not have standing to assert the claims raised, but Contiguous may. <u>See</u> <u>Sterngass v. Bowman</u>, 563 F. Supp. 456, 459 (1983) ("Corporations are 'persons' for the purposes of the due process and equal protection clauses of the Fourteenth Amendment.") (citing <u>Grosjean v. American Press Co.</u>, 297 U.S. 233, 244, 56 S. Ct. 444, 446-47, 80 L. Ed. 2d 660 (1936); <u>Citizens United v. Fed. Election Comm'n</u>, 558 U.S. 310, 312, 130 S. Ct. 876, 883, 175 L. Ed. 2d 753 (2010) (recognizing "that the First Amendment applies to corporations). Thus, leave to amend is GRANTED.

[Remainder of Page Intentionally Left Blank]

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (Docket Entry 8) is GRANTED.  Plaintiff's claims are dismissed without prejudice.  Plaintiff may file an amended complaint within thirty (30) days from the date of this Memorandum and Order.  Failure to do so will result in dismissal with prejudice.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: September __18__, 2015
       Central Islip, New York