```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
CONTIGUOUS TOWING, INC.,
LORRAINE CHRISTIE,

                    Plaintiff,
                                           MEMORANDUM & ORDER
       -against-                           14-CV-4919(JS)(SIL)

STATE OF NEW YORK, NEW YORK STATE
DEPARTMENT OF TRANSPORTATION, JOAN
McDONALD, in her official and
individual capacity, MICHALE UFKO,
in his official and individual
capacity, JESSICA POLITO PARKER,
in her official and individual
capacity, and LT. RICHARD CLIFFORD,

                    Defendants.
----------------------------------------X
APPEARANCES
For Plaintiff:     Steven A. Morelli, Esq.
                   The Law Offices of Steven A. Morelli, P.C.
                   1461 Franklin Ave.
                   Garden City, NY 11530

For Defendants:    Ralph Pernick, Esq.
                   New York State Attorney General
                   200 Old Country Road, Suite 240
                   Mineola, NY 11501
```

SEYBERT, District Judge:

Plaintiffs Lorraine Christie ("Christie") and Contiguous Towing, Inc. ("Contiguous" and together with Christie, "Plaintiffs") commenced this action against defendants the State of New York (the "State"), New York State Department of Transportation (the "DOT"), Joan McDonald ("McDonald"), Michael Ufko ("Ufko"), Jessica Polito Parker ("Parker") and Lt. Richard

Clifford ("Clifford," and collectively "Defendants") on August 19, 2014. Plaintiff alleges that Defendants violated her constitutional rights in connection with the revocation of a towing contract held by Contiguous. Plaintiff also asserts a state law claim for tortious interference with contract. On September 18, 2016, the Court granted Defendants' motion dismissing Plaintiffs' first Complaint, but afforded Plaintiffs an opportunity to replead their allegations. (See, Mem. & Order, Docket Entry 14.) Plaintiff filed an Amended Complaint in October 2015. (Am. Compl., Docket Entry 15.) Currently before the Court is Defendants' motion to dismiss the Amended Complaint pursuant to Rules 12(b)(6) for failure to state a claim. (Docket Entry 16.) For the following reasons, Defendants' motion is GRANTED.

BACKGROUND[1]

Contiguous is a towing and repair corporation located in Freeport, New York. (Am. Compl. ¶ 12.) Sometime before September 30, 2013, Contiguous submitted the highest bid to the DOT for a contract providing them the exclusive right to tow on the New York State Parkway, Sector D ("Sector D"). (Am. Compl. ¶¶ 15-16.) Sector D encompasses the Southern State Parkway between the Meadowbrook Parkway and Wantagh Parkway, and south to Ocean

---

[1] The following facts are drawn from the Amended Complaint and are presumed to be true for the purposes of this Memorandum and Order.

Parkway between Long Beach and Suffolk County. (Am. Compl. ¶ 15.) On September 30, 2013, Contiguous entered into the bid-upon contract with the DOT (the "Contract"). (Am. Compl. ¶ 15.) The Contract was effective immediately, and remained in effect for five years. (Am. Compl. ¶ 17.) Contiguous made an initial payment of $50,000 to the DOT, followed by a February 2014 payment of $30,000, and a March 2014 payment of $21,000. (Am. Compl. ¶ 18.)

Christie alleges that in spite of the Contract, the DOT frequently awarded towing jobs within Sector D to Contiguous' competitor, All County Auto Body & Towing ("All County"). (Am. Compl. ¶ 20.) As a result, Contiguous lodged complaints against All County with the DOT for encroaching on territory assigned in the Contract. (Am. Compl. ¶ 21.) On one occasion in January 2014, a dispute arose between Contiguous and All County over a tow job in Sector D. (Am. Compl. ¶ 21.) During this incident, Clifford, a New York State Trooper, falsely accused Contiguous of not carrying insurance, and had Contiguous' vehicle impounded. (Am. Compl. ¶ 22.) Christie further alleges that Clifford and Defendants told customers that Plaintiff was "a ripoff and a sham," said that she "robb[ed] customers," and "direct[ed] customers to avoid Christie's businesses. (Am. Compl. ¶ 52.)

Throughout the contractual period, the DOT also found Contiguous in violation of various regulations. Examples of these violations include over-charging customers and failing to disclose

inactive corporations owned by Christie. (Am. Compl. ¶¶ 24-26.) However, Christie maintains that the alleged violations were either factually inaccurate or minor. (Am. Compl. ¶ 23.) Christie explains that the overcharge was only a proposed invoice sent to the DOT for approval, not a bill sent to customers. (Am. Compl. ¶ 25.)

In April 2014, the DOT's Contract Review Unit held a "perfunctory" hearing regarding Contiguous' violations. (Am. Compl. ¶ 28.) Christie insists that prior to that hearing, she submitted documentation showing that Contiguous was substantially compliant with DOT regulations. (Am. Compl. ¶ 27.) In addition, Christie asserts that the DOT failed to produce witnesses or evidence during the hearing. (Am. Compl. ¶ 28.) Following the hearing, the DOT terminated the Contract, effective May 16, 2014. (Am. Compl. ¶ 27.) Comparatively, Christie alleges that the DOT did not issue any suspensions or terminate All County's contract, despite numerous customer complaints. (Am. Compl. ¶ 33.) However, Plaintiff does not explain what violations, if any, All County was charged with.

From these facts, Plaintiffs assert five causes of action. First, Plaintiffs claim that the DOT violated her First Amendment rights by retaliating against them. (Am. Compl. ¶¶ 38-41.) Second, Plaintiffs allege violations of their right to due process under the Fourteenth Amendment because Christie was

4

deprived of a property right without a sufficient hearing. (Am. Compl. ¶¶ 42-46.) <u>Third</u>, Plaintiffs allege a violation of their equal protection rights under the Fourteenth Amendment because the DOT selectively enforced their rules by prosecuting Contiguous and declining to prosecute All County, a comparative entity. (Am. Compl. ¶¶ 47-50.) <u>Fourth</u>, Christie alleges a stigma-plus claim against Defendants. (Am. Compl. ¶¶ 51-53.) <u>Fifth</u>, Christie alleges a state claim for tortious interference with contractual relations against defendants McDonald, Parker, Ufko, and Clifford. (Am. Compl. ¶ 54-55.)

## DISCUSSION

I. <u>Legal Standard</u>

In deciding a Rule 12(b)(6) motion to dismiss, the Court applies a "plausibility standard," which is guided by "[t]wo working principles." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (citing <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 556-57, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007); <u>accord</u> <u>Harris v. Mills</u>, 572 F.3d 66, 71-72 (2d Cir. 2009). First, although the Court must accept all allegations as true, this "tenet" is "inapplicable to legal conclusions;" thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Iqbal</u>, 556 U.S. at 678; <u>accord</u> <u>Harris</u>, 572 F.3d at 72. Second, only complaints that state a "plausible claim for relief" can survive

5

a Rule 12(b)(6) motion to dismiss. Iqbal, 556 U.S. at 679. Determining whether a complaint does so is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.; accord Harris, 572 F.3d at 72.

Furthermore, in deciding a motion to dismiss, the Court is confined to "the allegations contained within the four corners of [the] complaint." Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 71 (2d Cir. 1998). However, this has been interpreted broadly to include any document attached to the complaint, any statements or documents incorporated in the complaint by reference, any document on which the complaint heavily relies, and anything of which judicial notice may be taken. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002) (citations omitted); Kramer v. Time Warner Inc., 937 F.2d 767, 773 (2d Cir. 1991).

## II. Stigma-plus Claim

Christie asserts a "stigma plus" claim in her Amended Complaint. Specifically, Christie claims that her constitutional rights were violated when Defendants "made disparaging and injurious remarks regarding [her] reputation and business practices." (Am. Compl. ¶ 52.) A stigma-plus claim arises out of the due process clause of the Fourteenth Amendment and "refers to a claim brought for injury to one's reputation (the stigma) coupled with the deprivation of some 'tangible interest' or property right

6

(the plus), without adequate process." DiBlasio v. Novello, 344 F.3d 292, 302 (2d Cir. 2003) (citations omitted). To state a stigma-plus claim, Plaintiffs must show: "(1) the utterance of a statement sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she claims is false, and (2) a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights." Sadallah v. City of Utica, 383 F.3d 34, 38 (2d Cir. 2004) (internal quotation marks and citation omitted). The type of damage sufficient to meet the second prong of the test cannot be "abstract" and "speculative," Hill v. Donoghue, 815 F. Supp. 2d 583, 589 (E.D.N.Y. 2011), and the "'deleterious effects [flowing] directly from a sullied reputation,' standing alone, do not constitute a 'plus' under the 'stigma plus' doctrine." Sadallah, 383 F.3d at 38 (quoting Valmonte v. Bane, 18 F.3d 992, 1001 (2d Cir. 1994) (alteration in original).

Here, Christie claims that Defendants' statements caused customers to avoid her business and to use competitors. This allegation, standing alone, does not state a stigma plus claim because Christie cannot point to any damage in the form of a liberty or property interest that is separate and apart from the general business and reputational harm flowing from the alleged defamation. Plaintiffs' stigma plus claim is therefore DISMISSED.

7

III. First Amendment Retaliation

The elements of a First Amendment retaliation claim are dependent on the "factual context" of the case. Williams v. Town of Greenburgh, 535 F.3d 71, 76 (2d Cir. 2008). For example, the test is more rigorous for a public employee claiming she was wronged by her employer as a result of her speech than it is for a private citizen suing because her speech was chilled by the government. Compare Curley v. Vill. of Suffern, 268 F.3d 65, 73 (2d Cir. 2001) with Local 621, S.E.I.U., AFL-CIO v. City of N.Y., No. 99-CV-9025, 2002 WL 31151355, at *14 (S.D.N.Y. Sept. 26, 2002). In this case, Plaintiffs allege that Defendants terminated Contiguous' contract with DOT as a result of complaints Plaintiffs made. (Am. Compl. ¶¶ 38-41.) Plaintiffs were not technically employees of the government. But given the contractual relationship between Contiguous and the DOT and the nature of Plaintiffs' retaliation claim, which seeks redress for the termination of the contract, the Court finds that the parties' relationship was tantamount to an employment relationship for purposes of their First Amendment retaliation claim. See White Plains Towing Corp. v. Patterson, 991 F.2d 1049, 1059-61 (2d Cir. 1993) (upholding the determination that a towing company's contractual relationship with the government was "tantamount to employment"). To survive a motion to dismiss, Plaintiffs therefore had to plead the following elements to make out a First Amendment

Retaliation claim: (1) Plaintiffs engaged in constitutionally protected speech because they spoke as citizens on a matter of public concern; (2) they suffered an adverse employment action; and (3) the speech was a motivating factor in the adverse employment decision. Epstein v. Cty. of Suffolk, No. 14-CV-0937, 2015 WL 5038344, at *9 (E.D.N.Y. Aug. 26, 2015) (citations omitted). The allegations in the Amended Complaint fall short of this burden because Plaintiffs do not plausibly allege that they spoke out about a matter of public concern. The Amended Complaint merely alleges that "Contiguous Towing made complaints to the DOT regarding . . . [e]fforts by DOT and New York State troopers to shut down Contiguous Towing's business," (Am. Compl. ¶ 39.) Grievances regarding private contractual disputes, however, are not matters of public concern. White Plains Towing, 991 F.2d at 1060 (finding that complaints to the government regarding "private commercial grievances" did not "relate to any matter of political, social, or other concern to the community and hence could not provide a basis for recovery"); Lewis v. Cowen, 165 F.3d 154, 164 (2d Cir. 1999) ("[S]peech on a purely private matter, such as an employee's dissatisfaction with the conditions of his employment, does not pertain to a matter of public concern."); see also Heusser v. Hale, 777 F. Supp. 2d 366, 381-82 (D. Conn. 2011). Thus, Plaintiffs' First Amendment retaliation claim is deficient, and therefore DISMISSED

IV. <u>Procedural Due Process</u>

Plaintiffs claim they were denied due process when DOT terminated Contiguous' contract following a "pro forma" hearing, during which Contiguous was not allowed to cross examine any witnesses. (Am. Compl. ¶¶ 44-45.)

Under the Fourteenth Amendment to the United States Constitution, no state can "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. AMEND. XIV. "Procedural due process refers to the minimal requirements of notice and a hearing guaranteed by the Due Process Clause of the Fifth and Fourteenth Amendments when the deprivation of a significant life, liberty or property interest may occur." <u>Seymour's Boatyard, Inc. v. Town of Huntington</u>, No. 08-CV-3248, 2009 WL 1514610, at *4 (E.D.N.Y. June 1, 2009) To prevail on a procedural due process claim, Plaintiffs must show that they: (1) had a "protected liberty or property interest" and (2) were "deprived of that interest without due process." <u>McMenemy v. City of Rochester</u>, 241 F.3d 279, 286 (2d Cir. 2001) (internal quotation marks and citation omitted). Not every property interest is subject to constitutional protection, however. <u>See</u> <u>Martz v. Inc. Vill. of Valley Stream</u>, 22 F.3d 26, 30 (2d Cir. 1994). To have a protected property interest, "a person clearly must have more than an abstract need or desire for it[, h]e must have more than a unilateral expectation of it." <u>Bd. of Regents of State Colleges</u>

v. Roth*,* 408 U.S. 564, 577, 92 S. Ct. 2701, 2709, 33 L. Ed. 2d 548 (1972). In S & D Maintenance Co. v. Goldin, 844 F.2d 962, 966 (2d Cir. 1988), the Second Circuit expressed hesitancy expand procedural due process to ordinary commercial contracts with the government, explaining that "an ordinary commercial contract is qualitatively different from the interests the Supreme Court has thus viewed as 'property' entitled to procedural due process protection." The Court noted, however, that more permanent contractual rights conferred by the government, such as welfare benefits or tenured status in public employment are protected by the due process clause. Id. Three "broad principles" can be derived from the Second Circuit's ruling in this area: (1) "ordinary or routine government contracts do not, by themselves, give rise to [a protected property interest]"; (2) the kind of contract that does give rise to a protected property interest typically "protects its holder from the state's revocation of . . . an estate within the public sphere characterized by . . . either extreme dependence . . . or permanence; and (3) "employment contracts receive special treatment." Gizzo v. Ben-Habib, 44 F. Supp. 3d 374, 385-86 (S.D.N.Y. 2014) (collecting cases); Martz*,* 22 F.3d at 31 ("where a breach of contract does not give rise to a deprivation of a protectable property interest, plaintiff's exclusive remedy 'lies in . . . breach of contract.'" (quoting S & D Maintenance*,* 844 F.2d at 968)); see, e.g., Seymour's Boatyard,

2009 WL 1514610, at *4-5 (holding that a municipality's decision to rescind a "launch and mooring" service contract was merely a "unilateral expectation," which did not trigger due process protection).

Here, Plaintiffs' interest in their five-year towing contract is not the kind of benefit conferred by the government which is subject to due process protection. The contract does specify that it can only be terminated if the Commissioner of Transportation determines the Contractor "to be non-responsible"; and the contract also states that DOT must provide Plaintiffs with "a reasonable opportunity to be heard" before it is terminated. (Contract, Docket Entry 16-2, at 2.) However, these requirements are specific terms of the contract, enforceable through state contract law. The contract does not contemplate any degree of permanence beyond the five-year term and is not subject to statutory protection. Thus, this routine commercial agreement between a government entity and a business is not a benefit subject to constitutional protection. The Plaintiffs therefore should not look to the federal courts to enforce the terms of their contract and have an adequate remedy in contract law for wrongful termination of the agreement.[2]

---

[2] The Court similarly finds that Plaintiffs have not alleged sufficiently egregious conduct on the part any government actors to state a substantive due process claim. See Autotech

V.  Equal Protection

Plaintiffs claim that they were denied equal protection of the laws guaranteed by the Fourteenth Amendment of the Constitution. (Am. Compl. ¶ 48.) In their opposition, Plaintiffs make clear that they are proceeding under the "class-of-one" theory, alleging that DOT personnel treated Contiguous and Christie differently their competitors, but had no rational basis for doing so. (Pl.'s Opp. Br., Docket Entry 21, at 14-15.)

The Fourteenth Amendment prohibits the government from denying "to any person the equal protection of the laws." U.S. CONST. AMEND. XVI, § 1.A. To state an equal protection claims Plaintiffs must generally show: (1) adverse treatment "compared with other similarly situated individuals" and (2) "that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." Miner v. Clinton Cty., 541 F.3d 464, 474 (2d Cir. 2008) (internal quotation marks and citation omitted). However, to state a claim for violation of the Equal Protection Clause based upon a class-of-one theory, a plaintiff must allege "that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in

---

Collision, Inc. v. Vill. of Rockville Centre, No. 14-CV-6089, 2015 WL 7756124, at *3 (E.D.N.Y. Dec. 1, 2015).

13

treatment." Vill. of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S. Ct. 1073, 1074, 145 L. Ed. 2d 1060 (2000) (per curiam). In addition, "'[c]lass-of-one plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves.'" Ruston v. Town Bd. for Town of Skaneateles, 610 F.3d 55, 59 (2d Cir. 2010) (quoting Clubside, Inc. v. Valentin, 468 F.3d 144, 159 (2d Cir. 2006). Specifically, Plaintiffs must show,

> that (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake."

Id. (internal quotation marks and citation omitted). Given this heightened pleading standard, it is clear that plaintiffs proceeding on a class of one theory cannot simply state in conclusory fashion that it was similar to a comparators. Rather, they must provide details showing that the comparators are similarly situated. See, e.g., Cutler v. City of New Haven, No. 11-CV-0662, 2011 WL 6209891, at *1-2 (D. Conn. Dec. 12, 2011) (finding that the plaintiff stated a claim when the complaint alleged the "specific types of conduct that could constitute disparate treatment and an underlying motive by [the] Mayor [ ] to further his own interest rather than the public interest.");

14

Kenmore Mercy Hosp. v. Daines, No. 09-CV-162S, 2011 WL 4368564, at *5–6 (W.D.N.Y. Sept. 19, 2011) (dismissing an equal protection claim because "[a]lthough plaintiff alleged there were other, similarly situated, landowners, he provided no details explaining the similarities").

Plaintiffs have not sufficiently pleaded a class-of-one equal protection claim in this case. Plaintiffs allege in the Amended complaint that "All County Auto Body & Towing, a competitor of Contiguous [ ] with a DOT contract, was subject to numerous consumer complaints," but unlike Contiguous, its contract was not terminated by DOT. (Am. Compl. ¶ 33.) Although the Amended Complaint provides some information about the kinds of complaints levied against Contiguous, no details are provided about the nature of the "consumer complaints" brought against All County. Plaintiffs' pleading thus provides insufficient detail showing that Contiguous' circumstances bore an "extremely high degree of similarity" to those of All County. Rustin, 610 F.3d at 59. Plaintiffs' equal protection claim is therefore DISMISSED.

VI. State Claims

The Court declines to exercise supplemental jurisdiction over Plaintiffs' state law tortious interference claim. Under Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350, 108 S. Ct. 614, 619, 98 L. Ed. 2d 720 (1988), a federal court should generally decline to exercise supplemental jurisdiction over state law

15

claims if, as is the case here, the complaint's federal claims are dismissed in the litigation's early stages and there no diversity jurisdiction. See 28 U.S.C. § 1367(c)(3); Tops Mkts., Inc. v. Quality Mkts., Inc., 142 F.3d 90, 103 (2d Cir. 1998) ("[W]hen all federal claims are eliminated in the early stages of litigation, the balance of factors generally favors declining to exercise pendent jurisdiction over remaining state law claims and dismissing them without prejudice.") (emphasis in original).

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (Docket Entry 16) is GRANTED and Plaintiffs' federal claims are DISMISSED WITH PREJUDICE. In addition, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims, which are DISMISSED WITHOUT PREJUDICE, and may be refiled in state court.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: August  15 , 2016
       Central Islip, New York